# MEMORANDA

OF

# CASES NOT REPORTED IN FULL.

HIRAM YORK, Plaintiff in Error, *v.* THE PEOPLE OF
THE STATE OF NEW YORK, Defendants in Error.

*Evidence — opinion of a witness as to the solvency of a third person — when it is*
*inadmissible — when he must state facts only.*

Certiorari, in the nature of a writ of error founded on a bill of
exceptions, to the Court of Sessions of Allegany county to review a
trial and conviction of the plaintiff in error for false pretenses
in obtaining moneys by way of deposits in the banking-house of
York & Chamberlain, in the town of Wellsville, in said county
of Allegany.

The plaintiff in error was indicted in Allegany county for having
procured deposits of money to be made with the firm of York &
Chamberlain, a banking firm composed of Hiram York and Calvin
T. Chamberlain, which was carrying on business in Wellsville, in
said county, by means of false pretenses, "on or about the 1st day
of January, 1878." The indictment, among other things, charged
the plaintiff in error with having falsely represented to Leonard H.
Frisbey "that he and one Calvin T. Chamberlain were copartners
in the banking business * * * under the firm name of York &
Chamberlain; that said Chamberlain was worth from $50,000 to
$100,000, and that said bank was solvent, sound and good," and
that Frisbey delivered to the said Hiram York $1,500, and "did
then and there deposit the said money in the banking-house, which
was then being run by said York under the name of York & Cham-
berlain, * * * as was alleged by said York at that time, and
in which said Chamberlain was a copartner as said York then
and there alleged; * * * and the said Hiram York did
then and there designedly receive and obtain of the said Leonard

H. Frisbey the said proper moneys and valuable things   *   *   * by means of the false pretenses and representations aforesaid, and got him to deposit the same in and with said banking-house and with intent to cheat and defraud the said Leonard H. Frisbey of the same." The indictment then alleged that said York & Chamberlain were not copartners in the banking business, doing business at Wellsville * * * under the firm name of York & Chamberlain; that "said Chamberlain was not in any manner connected with or interested in the banking house or bank where said Frisbey deposited his said money as aforesaid; that York was running said banking-house alone and not as a copartner with said Chamberlain; that said banking-house or bank was not solvent, sound and good, but was insolvent, unsound and not good, and the pretenses and representations so made as aforesaid by the said York to the said Leonard H. Frisbey were *in all respects* utterly false and untrue."

During the trial evidence was given in respect to Chamberlain's connection with the business, tending to show that he had not dissolved his copartnership with York, which had existed many years prior to the time named in the indictment, as that at which the representations were made. It appeared Chamberlain died the last of June, 1878.

The court at General Term said : " Proof was given tending to show the representations were made as alleged as to the pecuniary standing of Chamberlain, as alleged in the indictment. There was no definite and positive proof thereof showing his assets and liabilities at the time of his death, nor in the month of January, 1878. But instead thereof, one Gabriel Bishop was called as a witness by the people, who testified ' that he was conversant with Mr. Chamberlain's business, and knew of his real estate and his personal estate, and of his bank stock and of his debts, and knew of this in 1877, and up to June, 1878.'

" The case states, viz.: ' He was then asked what, in his opinion, was the financial standing of Calvin T. Chamberlain from October, 1877, to February, 1878.' This was objected on numerous grounds, and among others, on the ground that the witness should be confined to facts; that his opinion was not evidence.

" The witness was asked by the defendant's counsel if the will of Chamberlain was admitted to probate, and he said it was, and that

he was one of the executors, and that debts had been presented to him as executor; that the will disposed of real and personal estate; that the real estate was a matter of record, and mortgages given to Chamberlain and owned by him, were of record; and that Chamberlain owned a large tract of timber land in Pennsylvania, which was a matter of record.

"The objections were renewed and they were overruled, 'and the witness was permitted *to give his opinion*, and stated that he was of the opinion that Chamberlain was during such time insolvent.' Defendant took an exception to the reception of such testimony, and asked to strike out such testimony, and the motion therefor was denied, and the defendant again excepted.

" The ruling calls upon us to consider whether the opinion of the witness was competent. He was not asked to state as a fact the standing of Chamberlain financially, but his opinion in respect to it. The question did not call for the facts known to the witness, nor as to the fact of what his standing was, but squarely for the opinion of the witness. In *Thompson* v. *Hall* (45 Barb., 216), the court said of a question in respect to a party's being able to pay his debts at a time mentioned, that it was competent as a fact, and he added, " I do not understand the question as calling for the opinion of the witness simply." That case is not an authority to sustain the ruling before us, but, on the contrary, indicates that the learned judge who wrote the opinion was adverse to the reception of a witness' opinion as to the financial standing of a party. In *Denman* v. *Campbell* (7 Hun, 88), it was held error to allow a question put in the following words, viz.: " Is Donal Campbell a man of responsibility ? " *Slingerland* v. *Bennett* (6 Sup. Ct. [T. & C.], 446), does not contain the ruling made in this case in hand. There the question collaterally arose as to the standing of a party reputed to be a man of wealth. The repute of the party inquired about was not directly involved in the issue. It was very important in this case to establish the financial standing and ability of Chamberlain in January, 1878, and the fact was one which might have been proven by satisfactory testimony. The opinion of Bishop was not admissible, and it was wholly insufficient to prove what Chamberlain was worth in January, 1878. (See *Haggerty* v. *Brooklyn City R. R. Co.*, 6 Abbott N. C., 131.)

"In the course of the charge delivered by the court, the standing of Chamberlain, the evidence bearing upon the representation as to his being worth $50,000 to $100,000, and the evidence as to his insolvency were referred to, and the jury were left to find that the representation was made that he was worth $50,000 to $100,000, and that, when it was made, Chamberlain in fact was insolvent, and to convict upon finding such facts.

"The evidence of Bishop's opinion was thereby made important and influential before the jury, and the erroneous reception of his opinion may have produced the conviction. For that error we think there should be a reversal and a new trial.

"Order and conviction reversed, and proceedings remitted to the Court of Sessions of Alleghany county, with directions for a new trial."

*Hamilton Ward*, for the plaintiff in error.

*George W. Loveridge*, district attorney, for the people, defendants in error.

Opinion by HARDIN, J.; SMITH, P. J. and BARKER, J., concurred.

So ordered.